United States District Court
Southern District of Texas
**ENTERED**
August 26, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SMALL ISLANDS DEVELOPING STATES | § | |
| and ALBERT BINGER, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-04447 |
| | § | |
| SEAONE HOLDINGS, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ORDER**

Pending before the Court are cross-motions for summary judgment. Plaintiffs Small Islands

Developing States ("SIDS DOCK") and Dr. Albert Binger ("Binger") (collectively, "Plaintiffs")

filed a Motion for Summary Judgment (Doc. No. 23), to which Defendant SeaOne Holdings LLC

("SeaOne") responded. [1]  (Doc. No. 30). SeaOne also filed a Cross-Motion for Summary Judgment

to Enforce Limitation of Liability (Doc. No. 31), and Plaintiffs responded. (Doc. No. 32).

**BACKGROUND**

This is a breach of contract case. The following facts are undisputed unless otherwise

noted. SIDS DOCK describes itself as a "United Nations recognized international organization

established in 2015, with all the rights and privileges for addressing climate change, resilience,

and energy security in small islands." (Doc. No. 1 at 2). SIDS DOCK "represents 32 small islands

and low-lying developing states across the globe. It is so named because it is designed as a

'DOCKing station,' to connect the energy sector in [small islands] with the global markets for

---

[1] In its Response to Plaintiffs' Motion for Summary Judgment, Seaone also purports to include a "Cross-Motion on Contract Claims." (Doc. No. 30 at 1). While the Court will consider each of SeaOne's arguments, the Court notes that it is somewhat unclear which arguments were raised in response to Plaintiffs' Motion and which were raised as affirmative grounds for summary judgment in favor of SeaOne.

finance and sustainable energy technologies." (*Id.*). It is based in Belize. Binger was the first Coordinator and Secretary-General of SIDS DOCK.

SeaOne developed proprietary Compressed Gas Liquid ("CGL") technology and attempted to develop a CGL Receiving Terminal in Jamaica, with the apparent goal of "us[ing] its proprietary transport system and technology to combine gas and natural gas liquids…into one liquid product, to ship cleaner, lower-cost fuels for delivery to customers in Jamaica." (Doc. No. 31 at 2).[2] SeaOne claims that it was "actively pursuing" opportunities to supply fuel to the electric utility and alumina refinery in Jamaica prior to 2016, when it was introduced to Binger and SIDS DOCK.

In December 2016, SeaOne and SIDS DOCK signed a Memorandum of Understanding ("MOU"). SeaOne claims that under the MOU, Binger would arrange meetings and make connections on behalf of SIDS DOCK regarding the potential installation of a CGL Receiving Terminal in Jamaica and the potential delivery by SeaOne of gas and natural gas liquids to customers in Jamaica. (Doc. No. 31 at 3). In return for Binger's assistance, SeaOne agreed to make monthly payments in the amount of $10,000 to the Caribbean Community Climate Change Center ("CCCCC"), and SeaOne would reimburse SIDS DOCK for all reasonable out-of-pocket expenses incurred by Binger. (Doc. No. 23-2 at 4). The agreement was apparently running smoothly until March 2020. At that point, Plaintiffs argue that SeaOne "without explanation" stopped paying submitted invoices for the monthly payments. Plaintiffs brought this breach of contract action, arguing that they are owed a total of $250,000 under the MOU.

In response, SeaOne argues that from March 2020 to April 2022, "there were no ongoing contract negotiations for installation of a CGL Terminal in Jamaica." (*Id.*). Additionally, SeaOne claims that no new bids or proposals were negotiated, nor were there any meetings with

---

[2] Jamaica appears to be one of the nations involved with SIDS DOCK.

government officials in Jamaica from March 2020 onward. SeaOne claims that "between April 2020 and 2022, SeaOne received invoices from the CCCCC with no supporting detail and no records of any activity, work, or expenses in Jamaica to substantiate the charges or work performed."[3] (Doc. No. 30 at 4). Further, SeaOne argues that "no itemized receipts were provided as required under Section 3.2 of the MOU."[4] (Doc. No. 30 at 2).

Plaintiffs now move for summary judgment on their sole breach of contract claim, arguing that SeaOne breached the MOU by "failing to honor [its] obligation to pay Plaintiffs' monthly invoices." (Doc. No. 23 at 1). Plaintiffs seek an award of $250,000 in actual damages and $250,000 in punitive damages. (*Id.* at 9). Defendant responded in opposition, asserting that Binger and SIDS DOCK failed to fully perform the MOU or, in the alternative, failed to properly document their expenses and activity as required by the MOU. Defendant also complains that Binger was not a party to the contract, and that SIDS DOCK suffered no injury because the monthly fees were payable to the CCCCC rather than SIDS DOCK directly. Defendant has also separately filed a cross-motion for summary judgment in its favor, asserting that SIDS DOCK agreed to a Limitation of Liability under the MOU that limits any claim or loss arising under the MOU to no more than $1,000. (*Id.* at 2).

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes

---

[3] The SIDS DOCK "invoices" sent to SeaOne charge $5,000 each (Plaintiffs allege they are owed $10,000 per month, payable in increments of $5,000). (Doc. No. 30-2 at 10).
[4] Although Section 3.2 on its face applies to the reimbursement of Binger's out-of-pocket expenses (which are not at issue here), SeaOne appears to argue that the "documentation" requirement applies equally to the monthly $10,000 payments to the CCCCC.

3

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## ANALYSIS

Plaintiffs allege that the MOU was in effect (after several extensions) between April 2017 and April 2022.[5] The MOU provides that monthly payments in the amount of $10,000 for SIDS DOCK's services to SeaOne should be made directly to the CCCCC. SeaOne was also obligated

---

[5] Both parties agree that the contract was extended several times. The original contract provided to the Court (by each party) expired in 2017. SeaOne also attached an "Extension of the MOU" that acknowledged the MOU had been extended through April 30, 2020 and further extended the MOU under the same terms and conditions through October 31, 2020. (Doc. No. 30-1). The parties filed a "Stipulation of Partial Dismissal" (Doc. No. 19) in which Plaintiffs agreed to voluntarily dismiss various extracontractual claims. The parties also stipulated that another "Extension of the MOU" was signed by both parties in October 2021 that extended the MOU through April 2022. Moreover, SeaOne states in its briefing that "[t]he MOU was extended half a dozen times at Plaintiff's request. The terms of the MOU never changed." (Doc. No. 30 at 14). For the purposes of this Order, the Court assumes that the contract was extended from its original expiration date in 2017 to April 30, 2022 under the same terms and conditions as the original contract.

to reimburse SIDS DOCK for Binger's monthly expenses, but those reimbursements are not at issue here. Binger admits that he did not submit any expenses for reimbursement between March 2020 and April 2022. (Doc. No. 30-3 at 67:03-11).

Until March 2020, SeaOne paid $10,000 per month to the CCCCC. At that point, SeaOne ceased making monthly payments. Plaintiffs argue that Defendant breached the contract by failing to make these monthly payments between April 2020 and April 2022. (Doc. No. 23 at 1). Defendant responds that it had no obligation to pay "unsubstantiated, flawed, or erroneous invoices for undocumented activity that did not comply with the MOU." (Doc. No. 30 at 1). Defendant also takes issue with Binger's standing to sue (given that he is not a party to the contract) and Plaintiffs' damages claim, given that the monthly fees of $10,000 were payable to the CCCCC rather than SIDS DOCK or Binger directly.

The contract is explicitly governed by New York law. At the outset, the Court notes that under New York law, a third party may sue as a beneficiary on a contract made for its benefit; however, "an intent to benefit the third party must be shown[.]" *Fields Enterprises Inc. v. Bristol Harbour Village Assn., Inc.*, 191 N.Y.S.3d 856, 860 (N.Y. App. Div. 4th Dept. 2023). Incidental beneficiaries have no right to enforce the contract. *Id.* "One is an intended beneficiary if one's right to performance is appropriate to effectuate the intention of the parties to the contract and either the performance will satisfy a money debt obligation of the promisee to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Cole v. Metro. Life Ins. Co.*, 708 N.Y.S.2d 789, 833 (N.Y. App. Div. 4th Dept. 2000) (citations omitted) (internal quotation marks omitted). Binger may arguably be a third party with standing to sue on the contract. The contract contemplates that SIDS DOCK will perform its obligations "through [Binger]" and that the monthly payments will be made "to SIDS

5

DOCK" (even if they are wired to the account of the CCCCC). (Doc. No. 23-2 at 3). Binger is mentioned several times in the contract, and SeaOne agreed (in a different provision) to reimburse Binger for his expenses through SIDS DOCK. (Doc. No. 23-2 at 4). There is, at the very least, a genuine issue of fact as to whether Binger is an intended beneficiary of the MOU. Since this issue was not fully briefed by the parties,[6] the Court will assume without deciding that Binger is in a position to enforce the contract.

Moreover, as a party to the contract, SIDS DOCK can sue to enforce it even if CCCCC is the entity entitled under the contract to the monthly payments. *See Associated Teachers of Huntington, Inc. v. Bd. of Ed., Union Free Sch., Dist. No. 3, Town of Huntington*, 306 N.E.2d 791, 794 (N.Y. 1973) ("the promisee has an undisputed right to enforce the contract made for the benefit of third parties").

Both SIDS DOCK/Binger and SeaOne argue that they are entitled to summary judgment in their favor based on the terms of the MOU. To establish a *prima facie* case for breach of contract under New York law, a plaintiff must prove (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages. *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022). In cases involving contract interpretation, summary judgment is appropriate if the contract in question is unambiguous and can be given a certain legal meaning or interpretation. *Administrators of Tulane Educ. Fund v. Debio Holding, S.A.*, 177 F. Supp. 2d 545, 548 (E.D. La. 2001) (citing *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir. 1992)).

---

[6] Binger's standing to sue on the contract was raised in SeaOne's combined response /"cross-motion on contract claims" under the heading "Binger/SIDS Suffered No Damages." (Doc. No. 30 at 11). SIDS DOCK and Binger did not file a reply to SeaOne's combined response/cross-motion and this issue did not arise in SeaOne's separately filed cross-motion for summary judgment.

As the Court sees it, there are several fact issues that preclude summary judgment for either party in this case.

## A. Damages and Contract Performance

SIDS DOCK and Binger argue that they are owed $250,000 in compensatory damages and $250,000 in punitive damages. To support their motion, SIDS DOCK and Binger provide: 1) the Unsworn Declaration of Albert Binger, 2) a copy of the MOU; 3) the Unsworn Declaration of Michael Sparks; and 3) a letter from counsel for SIDS DOCK and Binger to SeaOne notifying them of the alleged breach.[7] Presumably (although it is not itemized in any of Plaintiffs' supporting exhibits), the $250,000 in compensatory damages requested by Plaintiffs represents SeaOne's alleged failure to pay the $10,000 per month "fee" contemplated by the MOU for 25 months between 2020-2022. Defendant points out that Binger, at his deposition, was unable to provide any supporting records of the time spent or hours worked on SeaOne business development from 2020-2022. (Doc. No. 30-3 at 73:03-19).

The MOU provides as follows:

**2 – Scope of Services**

2.1 The Parties hereby agree to engage in a business relationship in which the Parties will individually and collectively undertake such discussions and negotiations with the Jamaican Authorities as mutually agreed upon by the Parties.

2.2 SeaOne will provide SIDS DOCK with advice and assistance as necessary to assist with and direct its efforts.

2.3 SIDS DOCK, through Dr. Albert Binger, shall provide SeaOne with assistance in developing and executing SeaOne's business development strategies within Jamaica, including, but not limited to, (a) discussions with governmental and industry officials related to the potential for customers in Jamaica to acquire gas and natural gas liquids in

---

[7] An unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). An exception to this rule exists under 28 U.S.C. § 1746, "which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made under penalty of perjury and verified as true and correct." *Id.* (citing 28 U.S.C. § 1746) (internal quotation marks omitted). Both unsworn declarations provided by Plaintiffs comply with the requirements of § 1746.

the United States of America, (b) discussions on how SeaOne could arrange for the delivery of such customers' gas and natural gas liquids to Jamaica, (c) the development by SeaOne of a CGL Receiving Terminal in Jamaica, and (d) such other strategies as identified by SeaOne from time to time.

2.3 SIDS DOCK will determine, in consultation with SeaOne, and giving due consideration for the expertise and knowledge of SIDS DOCK and Dr. Albert Binger, the manner and means by which the services are accomplished and SIDS DOCK and Dr. Albert Binger will at all times act in conformity with this MOU.

3.1 Payment for Services: In consideration of SIDS DOCK's work hereunder, SeaOne agrees to pay to SIDS DOCK the amount of $10,000 per month during the Term of this MOU for the assistance provided during that month, payable in increments of $5,000 on the 15th and 30th of each month. The initial fee of $5,000 shall be payable on December 30, 2016. If either the 15th and 30th of a month is not a business day (i.e., is not a Saturday, Sunday, or a day when commercial banks in Houston, Texas are closed), then such payment will be made on the following business day.

....

3.2 Expenses: SeaOne shall reimburse SIDS DOCK for all reasonable out-of-pocket expenses for travel, lodging, meals, and other expenses incurred by Dr. Albert Binger. SIDS DOCK shall provide SeaOne with itemized receipts and documentation of such out-of-pocket expenses which shall be presented in reasonable detail in invoices to be prepared by SIDS DOCK and provided to SeaOne on a monthly basis. Notwithstanding the preceding sentence, SIDS DOCK shall request written pre-authorization and approval for reasonable out-of-pocket expenses expected to exceed $1,000. SeaOne shall pay invoices submitted for the reimbursement of expenses within thirty (30) days.

(Doc. No. 23-2 at 3-4).

First, the Court finds that Defendant has raised a genuine issue of material fact as to whether Binger and SIDS DOCK complied with the "Scope of Services" requirements listed in the MOU. In his deposition, Binger admitted that he did not conduct any face-to-face meetings with industry officials in Jamaica to promote SeaOne business development from March 2020 to April 2022 (just electronic meetings) and that he could not recall any new introductions between SeaOne and "anyone in Jamaica" between April 2020 and April 2022. (Doc. No. 30-3 at 73:03-19). He could not provide any supporting information or estimate how many "days" he spent on phone calls for SeaOne between 2020-2022. (Doc. No. 30-3 at 178:23-179:03). As a result, the

Court finds that (at the very least) there is a genuine issue of material fact as to whether Binger acted in conformity with the MOU such that Plaintiffs' motion for summary judgment must be denied.

Moreover, the inherent ambiguity in the "scope of services" section of the MOU—and what exactly it required of Binger and SIDS DOCK, including any required recordkeeping or documentation—raises a genuine issue of fact precluding summary judgment. In his Declaration, Binger states that "at no time did [he] get complaints about [his performance]," and that he "was never asked to start providing monthly productivity reports" as a condition of the monthly payments to the CCCCC. (Doc. No. 23-1 at 7). Indeed, assuming the contract was extended under identical terms as presented to this Court by both parties, it is clear that Binger and SIDS DOCK were required to provide "itemized receipts and documentation" for the reimbursement of Binger's out-of-pocket expenses, but there is no equivalent language conditioning the monthly payments on similar documentation. (Doc. No. 23-2 at 3-4). The Court finds that summary judgment is inappropriate in favor of either party because the contract "cannot be given a certain legal meaning or interpretation" on this issue.

Nonetheless, the Court does grant in part SeaOne's "cross-motion on contract claims" as to punitive damages. SeaOne argues that punitive damages are not recoverable under New York law absent "highly unusual circumstances." (Doc. No. 30 at 19). Indeed, punitive damages are rarely available for a breach of contract claim under New York law. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 262 (S.D.N.Y. 2005). "They become available only when a defendant engages in conduct aimed at the public generally so that punitive damages become necessary to vindicate public rights." *Id.* (citations omitted) (internal quotation marks omitted). Plaintiffs argue that this "high bar" is met in the present case because "SeaOne has attempted to

9

create terms that never existed and to besmirch [Binger's] character." (Doc. No. 23 at 8). Plaintiffs have not, however, cited to any case law supporting their arguments, nor does the evidence attached to their motion raise a genuine issue of fact that punitive damages are recoverable in this breach of contract case. The Court grants summary judgment in favor of SeaOne on the issue of punitive damages.

### B. Limitation of Liability Clause

In its cross-motion (Doc. No. 31), SeaOne asks the Court to find as a matter of law that the Limitation of Liability Clause limiting any claim or loss arising under the MOU to no more than $1,000 is valid and enforceable.  (Doc. No. 30 at 2). SIDS DOCK and Binger respond that the limitation of liability clause should be declared unenforceable because "both Defendant and Plaintiffs were represented by the same law firm, Squire Patton Boggs." SIDS DOCK and Dr. Binger explain that they received representation through a pro bono program, while SeaOne was a paid client. They further argue that "this is not only a conflict of interest, as Mr. Hall admits in his declaration, but considering the same law firm is the one that introduced and facilitated the transaction between Plaintiff and Defendant, and Defendant is a paid client, it is clear that [SIDS DOCK and Binger] would be the lesser priority in the transaction over the law firm's paid client." (Doc. No. 32 at 9). SeaOne admits that Squire Patton Boggs represented the parties on both sides of the transaction. (Doc. No. 31 at 2).

Courts in New York normally honor liability limiting provisions unless the provision is the result of unconscionable conduct or unequal bargaining power between the parties. *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 478 (S.D.N.Y. 2006). New York courts have found that such determinations generally present factual questions more appropriate for the trial stage. *Id.* (collecting cases). SeaOne did not respond directly to SIDS DOCK and Binger's

unconscionability argument, and the Court finds that there is, at the very least, a fact issue on whether the limitation of liability clause is void for unconscionability given the allegations of unequal bargaining power between the parties. SeaOne's cross-motion for summary judgment is accordingly denied. (Doc. No. 31).

Moreover, the Court notes that the fact that the same law firm represented both sides to a contract does not make the contract automatically void, nor does it, by itself, cast a shadow of wrongdoing against the opposing party. It might prove troublesome for the law firm, but they are not a party here.

## CONCLUSION

Fact issues abound. Accordingly, the Court denies SeaOne's "Cross-Motion for Summary Judgment to Enforce Limitation of Liability." (Doc. No. 31). The Court further denies Plaintiffs' Motion for Summary Judgment. (Doc. No. 23). The Court grants in part SeaOne's "Cross-Motion on Contract Claims," raised as part of its response to Plaintiff's summary judgment motion, only as to the issue of punitive damages. On July 7, 2023, the parties appeared for a settlement conference with the Magistrate Judge. The case did not settle. According to the Minute Entry Order at Doc. No. 20, the Court advised the parties that it would conduct a second settlement conference after depositions were taken. A second settlement conference was never held. The Court hereby **ORDERS** the parties to submit a joint letter attesting that the possibility for settlement has been exhausted or, alternatively, advise the Court that a second settlement conference with a Magistrate Judge is requested.

Signed on this the 22nd day of August 2024.

Andrew S. Hanen
United States District Judge